******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

# ANNA ROCKHILL *v.* DANBURY HOSPITAL
## (AC 37864)

DiPentima, C. J., and Beach and Sheridan, Js.*

*Syllabus*

The plaintiff, a business invitee of the defendant hospital, sought to recover damages for negligence in connection with personal injuries she sustained when she struck her toe against an obstacle while walking in a crosswalk to the parking lot of the hospital, which caused her to fall and break one of her toes and to sustain other injuries. The case was tried to the court, which rendered judgment for the plaintiff, from which the defendant appealed to this court. *Held*:

1. The defendant could not prevail on its claim that the trial court erroneously found that the defect in the walkway that caused the plaintiff's injuries was a reasonably foreseeable hazard; that court, which reviewed reports prepared by members of the defendant's security and medical staff, and photographs depicting the alleged defect and the surrounding area, and which heard the testimony of the plaintiff and her daughter describing the fall and the defect, had before it adequate evidence of a broken slab of pavement that contained a chip in a well traveled walkway that had existed for a sufficient period of time, and, thus, its findings relating to this claim were not clearly erroneous and its conclusions were not unreasonable.

2. The trial court reasonably found, on the basis of the evidence presented, that the defect in the crosswalk was the actual cause of the plaintiff's fall; that court's finding that the plaintiff struck her toe on some obstacle while walking in or next to the crosswalk was reasonably supported by the evidence and the inferences drawn therefrom, namely, that there was broken pavement at the corner where the plaintiff's foot had hit, that when a security officer examined the area of the fall, he identified only the defect in question, that the sensation the plaintiff felt when striking her foot was the inside of the broken pavement, and that the defect caused the fall based on the proximity of the plaintiff's location after the fall to the location of the defect.

3. The trial court's finding that all of the plaintiff's medical costs were substantially caused by the fall was supported by the record and was not clearly erroneous; that court's findings that the plaintiff's fall was a substantial factor in bringing about her injuries and exacerbating her preexisting spinal stenosis were supported by the record, there having been expert testimony that the plaintiff's fall was a significant factor in her accelerated need for surgery, the relevant medical records admitted into evidence having indicated that the plaintiff began significantly complaining to her physician of chronic back pain shortly after the incident and prior to seeking surgical treatment, and the testimony and medical records having demonstrated that, prior to the fall, despite the radiological presence of the plaintiff's preexisting condition, the plaintiff led an active and independent lifestyle.

4. The trial court did not abuse its discretion in denying the defendant's motion to preclude the expert testimony of K, one of the plaintiff's treating physicians: K's reliance on the plaintiff's statements to him pertaining to her medical history did not render his opinion factually baseless, and the plaintiff's recitation of her medical history to K was reinforced by other medical records admitted into evidence, on which K relied, describing her complaints regarding back pain shortly after the fall and the extensive treatment she received thereafter; moreover, although K testified that his apportionment between the plaintiff's preexisting condition and the fall was admittedly arbitrary, he nonetheless opined that the plaintiff's fall was a significant factor in causing her accelerated need for surgery, his opinion was supported by the plaintiff's medical history and had a reasonable foundation in the evidence, and it was within the province of the court, as the trier of fact, to credit some, all or none of K's testimony regarding his conclusion that the plaintiff's fall exacerbated her preexisting condition.

Argued April 24—officially released August 29, 2017

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendant's negligence, brought to the Superior Court in the judicial district of Danbury and tried to the court, *Doherty, J.*; thereafter, the court denied the defendant's motion to preclude certain evidence; judgment for the plaintiff, from which the defendant appealed to this court; subsequently, the court, *Doherty, J.*, issued an articulation of its decision. *Affirmed.*

*Michael G. Rigg*, for the appellant (defendant).

*James P. Sexton*, with whom were *Michael S. Taylor* and, on the brief, *Marina L. Green*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Danbury Hospital, appeals from the judgment of the trial court rendered in favor of the plaintiff, Anna Rockhill, following a trial to the court. On appeal, the defendant claims that the court erroneously found that (1) a defect on the defendant's property that allegedly caused the plaintiff to fall was a reasonably foreseeable defect; (2) the defect caused the plaintiff to fall; and (3) all of the plaintiff's medical expenses were caused by the fall rather than by her preexisting spinal stenosis. The defendant also claims that the court abused its discretion in admitting the testimony of the plaintiff's expert witness pertaining to the causation element of her negligence claim. We affirm the judgment of the trial court.

The trial court's memorandum of decision sets forth the following relevant facts. On June 16, 2010, the plaintiff and her daughter, Cynthia Fusco, were visiting the plaintiff's husband, who was receiving medical care at Danbury Hospital. After their visit, the plaintiff and Fusco exited the hospital's main building and walked onto a walkway leading toward the parking lot. The plaintiff and Fusco were familiar with this walkway, as they had made this same trip several times in the past.

While the plaintiff and Fusco were walking along the pathway, the plaintiff hit something with her foot and fell to the ground. As a result of the fall, she sustained injuries to her right foot and ankle. It later was determined that she had broken her big toe and damaged the fifth metatarsal of her right foot. Within minutes of the fall, the plaintiff was taken to the defendant's emergency department by hospital staff where she was examined and treated for her injuries. As a result of her fall, the plaintiff experienced chronic lower back pain from a protruded disk that required several epidural steroid injections and, eventually, a surgical decompression procedure.

A trial to the court was held on August 26, 2014. On February 2, 2015, the court issued a memorandum of decision and rendered judgment in favor of the plaintiff. The court made detailed findings pertaining to both liability and damages. With respect to liability, the court noted that "the evidence [presented at trial] permits the court to find that the plaintiff struck her right toe against some obstacle while walking in or next to the crosswalk, which caused the fracture for which she was treated minutes later in the emergency department." The court further noted that the "area where the defect exists is contiguous with the crosswalk, a heavily traveled area used daily by patients and other invitees of the hospital." As to damages, the court found that the plaintiff's total damages were $181,076.45. The court further found that the plaintiff was contributorily negligent in each way alleged in the defendant's special

defenses.[1] The court found the plaintiff 40 percent at fault for the injuries she sustained. As a result, the court awarded judgment to the plaintiff in the amount of $108,645.87, plus taxable costs. This appeal followed.[2] Additional facts will be set forth as necessary.

## I

The defendant sets forth three claims challenging the factual findings of the trial court. Specifically, the defendant argues that the court erroneously found that (1) the divot[3] that caused the plaintiff's injuries was a reasonably foreseeable hazard; (2) the divot actually caused the plaintiff to fall; and (3) the plaintiff's fall caused all of her medical expenses. We disagree.

Before we address the defendant's individual claims, we set forth the guiding legal principles and our standard of review. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . If a plaintiff cannot prove all of those elements, the cause of action fails. . . . [I]n a negligence action . . . [a] causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case . . . ." (Citations omitted; internal quotation marks omitted.) *Right* v. *Breen*, 88 Conn. App. 583, 586–87, 870 A.2d 1131 (2005), rev'd on other grounds, 277 Conn. 364, 890 A.2d 1287 (2006).

Notably, the present case was tried to the court. When the court is the finder of fact, "inferenc[es] of fact [are] not reversible unless the inferenc[es] [were] arrived at unreasonably. . . . We note as well that [t]riers of fact must often rely on circumstantial evidence and draw inferences from it. . . . Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Moreover, it is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed." (Emphasis omitted; internal quotation marks omitted.) *Palkimas* v. *Fernandez*, 159 Conn. App. 129, 133–34, 122 A.3d 704 (2015).

## A

The defendant first claims that the court erroneously found that the divot causing the plaintiff's injuries was a reasonably foreseeable trip hazard. In support of this claim, the defendant raises two arguments. First, the defendant argues that this finding was improper as a matter of law because the divot is insufficient in size to constitute a reasonably foreseeable hazard; that is,

the divot is "trivial" as a matter of law. Second, it argues that the court's finding was speculative and unsupported by the record because the plaintiff failed to satisfy her burden of establishing that the divot was a reasonably foreseeable hazard. In response, the plaintiff argues that the size of the divot is presumptively a question for the finder of fact and that the trial court's finding that the divot was a reasonably foreseeable trip hazard is sufficiently supported by evidence in the record. We agree with the plaintiff.

In its memorandum of decision, the court concluded that "[t]he evidence elicited at trial permits the court to find that in or near the crosswalk where the plaintiff alleges to have fallen, there did exist a portion of uneven surface where the blocks of cement or other materials meet to form the crosswalk and the adjacent walkway. In addition, a small edge of raised surface appeared to have been chipped or otherwise broken off." The court further noted that the area in question was "well worn" and that the defect "is a specific condition which existed for a sufficient length of time as to give the defendant constructive notice of its existence." The court also found that the divot "is easily visible when looked upon directly and . . . there [were] no express signs or paint or other warnings located in its proximity to point it out."

After this court acted on the defendant's motion for review of the trial court's denial of the defendant's motion for articulation, the trial court articulated its ruling as to the "trivial defect" rule. The court stated that the divot, "which was the subject of extensive testimony and which was illustrated in the photographs comprising . . . [the] plaintiff's exhibit 1, was found by this court of sufficient size and orientation to permit the court to find that the plaintiff, Anna Rockhill, had proved, by a fair preponderance of the evidence, her allegation that it was the proximate cause of her fall on June 16, 2010, on the premises of the defendant . . . and that it was of sufficient size and duration so as to put the defendant on notice of its existence."

We necessarily begin with the defendant's argument that the divot causing the plaintiff's injury was insufficient in size as a matter of law. In support of this argument, the defendant contends that our Supreme Court's decision in *Older* v. *Old Lyme*, 124 Conn. 283, 199 A. 434 (1938), demonstrates that Connecticut adheres to a trivial defect rule,[4] as adopted by other jurisdictions. In essence, the defendant invites this court to examine the evidence and make its own factual finding to determine whether the divot was a reasonably foreseeable hazard or otherwise to conclude that the divot was too small to support liability as a matter of law. Neither approach is supported by our precedent.

In *Older*, the plaintiff sustained injuries while she was walking on public property and sought to hold the

municipality liable. The area in which she was walking was described by the court to be the outer edge of a sidewalk that extended "to the edge of the traveled portion of the adjoining highway." Id., 285. While the plaintiff was walking in that area, "she caught the heel of one of her shoes, fell, and sprained her ankle." Id. The hole that the plaintiff caught her heel in was "about [two] inches in width and about [one] inch in depth." (Internal quotation marks omitted.) Id. Judgment was rendered in her favor. Id., 284.

Our Supreme Court reversed. It discussed liability pursuant to a statutory predecessor of General Statutes § 13a-149, the highway defect statute. Liability was determined by standards somewhat different from the more general considerations underlying common-law premises liability. The court defined a highway defect to be "such an object or condition in, upon or near the traveled path as would necessarily obstruct or hinder one in its use for the purpose of traveling, or which from its nature and position would be likely to produce that result or injury to one so traveling upon it." Id. The only obligation of the municipality was to keep streets and sideways in a reasonably safe condition for travel. Id. The court noted that the question of whether a condition constituted a highway defect depended on "a great variety of circumstances"; it "is in general [a question] of fact," but whether the facts found warrant the conclusion of liability could be a question of law. Id., 285. The court concluded that the "subordinate facts as to its size and shape and especially its location at the extreme outer edge of the walk, comparable to the curb in usual forms of construction, and where persons would not ordinarily be expected to travel," did not support the conclusion of liability. Id.

In *Older*, then, the factor that a person was not likely to walk in the location of the defect was a significant, perhaps controlling, factor. See id.; see also *Ferreira* v. *Pringle*, 255 Conn. 330, 341–42, 766 A.2d 400 (2001) (seeking to hold municipality liable for defective highway, "may involve issues of [fact; however, whether] the facts alleged would, if true, amount to a highway defect according to the statute is a question of law" [internal quotation marks omitted]). There is in *Older* no mention of a "trivial defect rule," nor need there be. There simply was a recognition that in any particular case, evidence may be insufficient to support an essential element of the cause of action. The court did not establish a minimum "depth" requirement for liability.

In addition to its reliance on *Older*, the defendant also directs this court to authority in other jurisdictions that have adopted a less deferential standard of appellate review in determining whether a defect is "trivial" as a matter of law. In *Alston* v. *New Haven*, 134 Conn. 686, 60 A.2d 502 (1948), however, our Supreme Court declined to adopt such an approach. It stated that the

defendants "cited numerous cases from other jurisdictions claimed by them to establish that in other states courts are much more inclined to rule on the character of the defect as a matter of law. A detailed analysis of those cases would serve no useful purpose. In many states the appellate court has more power than this court over questions of fact." Id., 688.

Our Supreme Court in *Alston* further stated that while "courts and juries have refused to hold municipalities liable for slight defects . . . in only one case [*Older* v. *Old Lyme*, supra, 124 Conn. 283] has such a defect been held too slight as a matter of law to form the basis of a judgment for the plaintiff." *Alston* v. *New Haven*, supra, 134 Conn. 688. Furthermore, it noted that the alleged defect in *Older* "was not only slight but was in a place where pedestrians were not apt to walk." Id., 689. Our Supreme Court ultimately reiterated our longstanding approach to questions of fact in negligence claims, which is that "[u]nless only one conclusion can reasonably be reached, the question is one of fact for the trier." Id., 688. We are thus required by binding authority to reject the invitation to impose a firm "trivial defect" rule.

Our resolution of this claim, then, is guided by the following traditional legal principles. It is undisputed that the plaintiff in the present case was a business invitee of the defendant. The fact finder is the exclusive arbiter in determining whether the elements of negligence are satisfied, including whether the defect causing injury is reasonably foreseeable. See *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 330, 107 A.3d 381 (2015). In order "to prevail on a negligence claim as a business invitee in a premises liability case, it [is] incumbent upon [the plaintiff] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice of it. . . . [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. . . . In the absence of allegations and proof of any facts that would give rise to an enhanced duty . . . [a] defendant is held to the duty of protecting its business invitees from known, foreseeable dangers." (Internal quotation marks omitted.) *Porto* v. *Petco Animal Supplies Stores, Inc.*, 167 Conn. App. 573, 578–79, 145 A.3d 283 (2016).

Furthermore, "whether the injury is reasonably foreseeable ordinarily gives rise to a question of fact for the finder of fact, and this issue may be decided by the court only if no reasonable fact finder could conclude that the injury was within the foreseeable scope of the risk such that the defendant should have recognized the risk and taken precautions to prevent it. . . . In other words, foreseeability becomes a conclusion of

law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Citation omitted; internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC*, supra, 315 Conn. 330; see also *Doe* v. *Saint Francis Hospital & Medical Center*, 309 Conn. 146, 188, 72 A.3d 929 (2013) (question for fact finder to determine whether plaintiff's injuries were foreseeable). With these principles in mind, we turn to the question of whether the court's factual findings are sufficiently supported by the record.

Two reports were introduced into evidence. While the plaintiff received medical attention at the scene, a Danbury Hospital security officer spoke to Fusco and prepared an incident report. That report provided in relevant part: "[The plaintiff] exited the hospital via the main lobby after visiting her husband . . . . While crossing the main drive crosswalk she tripped and fell to the ground. She was assisted to the [emergency department] for examination." The security officer also transcribed Fusco's description of the incident in the report, which stated: "[The plaintiff] fell while walking across the main drive crosswalk. The witness believes that the right foot of her mother slipped into the crack causing her to fall." The report also noted the officer's personal observation and assessment of the location in question, and stated that the "[c]rosswalk path is slightly unlevel [and] at the end of the crosswalk near the elevator there is a crack where the slab's corner has been chipped." The report ended with a notation that photographs were taken of the incident location. The photographs were admitted into evidence.

Second, the emergency department's medical staff prepared a report at the time of the plaintiff's admission to the emergency room on June 16, 2010, following her fall. That report provided in relevant part: "[T]his pleasant [seventy-nine] year old female fell out in the parking [area], and then had right foot pain for which she was brought in. Advanced triage [led to] two x-rays of the right foot and ankle . . . . She is accompanied by her daughter who said that she is in pretty good health despite all of the medical problems she has, and there is no history of her feeling dizzy or having . . . neurologic symptoms which would cause her to have tripped and fallen. She has pain in her right foot in the front some pain in the ankle on any kind of movement but the worse pain is in the right foot frontal with the pain being fairly sharp worse with movement." The report also noted that the plaintiff's chief complaint was that she "fell in the hospital parking lot by the elevators where there is a bump in the walkway."

In addition, both Fusco and the plaintiff testified at trial. Fusco was called first to testify and stated that when the plaintiff fell, she reached down to assist the

plaintiff. While aiding the plaintiff, Fusco noticed "[t]hat there was this broken pavement at the corner where she—her right foot had hit." Fusco also testified that the plaintiff told her shortly after the fall that her "foot hit the pavement right there" and that she immediately complained of foot pain. Fusco also positively identified the gap in the concrete depicted in the plaintiff's exhibit 1 as the concrete gap that she referred to in her testimony.

The plaintiff's recollection of the events was not as detailed as Fusco's. She testified that it felt like she had "hit a block with [her] big toe." The plaintiff further testified that she was walking "to the elevator and just hit that spot." It was the plaintiff's belief that the "spot" caused the fall, but she admitted that she did not actually see what caused her fall.

The court reviewed the reports written by members of the defendant's security staff and medical staff, the photographs depicting the alleged defect and the surrounding area, and the testimony of the plaintiff and Fusco describing the fall and the divot. We conclude that there is adequate evidence in the record reasonably supporting the court's factual findings and conclusions. More specifically, the evidence presented at trial reasonably described a broken slab of pavement that contained a chip in a well traveled walkway that had existed for a sufficient period of time.[5] This evidence sufficiently supports the court's findings. Accordingly, the court's findings relating to this claim were not clearly erroneous, and its conclusions were not unreasonable.[6]

B

The defendant next claims that the plaintiff did not satisfy her burden of proving that the defect actually caused her injuries. Specifically, the defendant contends that, other than the evidence that the plaintiff's toe struck "something," nothing in the record supports the court's finding that the divot was the actual cause of her injuries. In response, the plaintiff argues that there is more than sufficient evidence supporting the court's findings pertaining to this claim. We agree.

In its memorandum of decision, the trial court found that "the plaintiff struck her right toe against some obstacle while walking in or next to the crosswalk, which caused the fracture for which she was treated minutes later in the emergency department." The court further found that "where the plaintiff alleges to have fallen, there did exist a portion of uneven surface where the blocks of cement or other materials meet to form the crosswalk and the adjacent walkway. In addition, a small edge of raised surface appeared to have been chipped or otherwise broken off." The court identified that uneven surface as the area depicted in the photographs admitted into evidence.

Before we address the defendant's claim, we set forth

the following relevant legal principles. "To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." (Citations omitted; internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 24–25, 734 A.2d 85 (1999).

The defendant takes issue with the court's conclusion that the plaintiff struck her toe on "some obstacle" by arguing that this conclusion is too imprecise or speculative. The defendant further argues that this imprecise conclusion is based on the plaintiff's similarly imprecise testimony that she "felt her right toe strike something as she was walking . . . ." Although these statements in a vacuum may perhaps be imprecise, there is significantly more evidence in the record supporting the court's finding that the divot was the actual cause of the plaintiff's injuries than the defendant sets forth. The opinion read as a whole shows that the court concluded that the plaintiff tripped on the defect identified by the witnesses.

As noted in part I A of this opinion, Fusco testified at trial and described the plaintiff's fall and what she noticed thereafter. When Fusco was asked what she observed in the area immediately next to where the plaintiff fell, she testified that "there was this broken pavement at the corner where she—[the plaintiff's] right foot had hit." Fusco also was shown the photographs taken by the security officer to whom she indicated that the "gap in the concrete" was the cause of her mother's fall. The plaintiff corroborated Fusco's testimony through her own testimony and described the sensation of striking what felt like a "block" with her right foot during the incident in question. Additionally, the report prepared by the security officer stated that "at the end of the crosswalk near the elevator there is a crack where the slab's corner has been chipped."

In our view, the court made several reasonable inferences from facts. We have found in the record evidence that (1) when the security officer examined the area, he identified only the defect in question; (2) the sensation that the plaintiff felt when striking her foot was the inside of the divot; and (3) the defect caused the fall based on the proximity of the plaintiff's location after the fall to the divot's location. We thus conclude that the court reasonably found that the divot was the actual cause of the plaintiff's fall. Accordingly, the court's findings with respect to this claim were not clearly erroneous.

C

Finally, the defendant claims that the court errone-

ously found that all of the plaintiff's medical bills were the result of her fall. Specifically, the defendant argues that "[d]espite the fact that [a medical expert] testified that only half of the 10 percent impairment he assigned to [the] plaintiff's back was related to the fall, the trial court concluded that 100 percent of the medical treatment was caused solely by the fall." In response, the plaintiff contends that the evidence at trial supports the court's conclusion that all of her medical bills were substantially caused by the fall. We agree with the plaintiff.

In its memorandum of decision, the court found that "the plaintiff . . . has proven by a fair preponderance of the evidence that she did sustain the injuries and losses which she alleged in her complaint, including the injuries which exacerbated prior conditions of spinal stenosis and low back pain, and that those injuries and losses were caused by the negligence of the defendant . . . ." Following this court's granting of the defendant's motion for review of the trial court's denial of its motion for articulation, the trial court articulated its decision in relevant part: "The evidence and testimony gave the court a factual basis for its finding that subsequent to her fall, the plaintiff underwent surgery, which required her to undergo rehabilitative care and treatment and which required her to purchase or otherwise acquire various items of rehabilitative equipment, drugs and miscellaneous items to promote her rehabilitation. As a proximate result of her fall, she incurred medical costs and expenses in a total amount of $131,076.45. The defendant offered no evidence or testimony which would permit the court to find that any of those expenses were incurred for anything other than the fractures which she sustained as a result of her fall on the defendant's premises on June 6, 2010, and the exacerbation of her preexisting back injuries."

Our inquiry is guided by the following legal principles. As noted previously in this opinion, one of the elements that a plaintiff must prove in order to prevail on a claim of negligence is legal cause. Legal cause comprises two components: (1) cause in fact and (2) proximate cause. See *Winn* v. *Posades*, 281 Conn. 50, 56–57, 913 A.2d 407 (2007). We noted previously that "[t]he test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." (Internal quotation marks omitted.) *Gurguis* v. *Frankel*, 93 Conn. App. 162, 167, 888 A.2d 1083, cert. denied, 277 Conn. 916, 895 A.2d 789 (2006). "The second component of legal cause is proximate cause . . . . [T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendants' conduct]. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for

the necessary causal connection. . . . This causal connection must be based upon more than conjecture and surmise." (Internal quotation marks omitted.) Id., 167–68. We review challenges to the finding of causation under the clearly erroneous standard because the conclusion of negligence is factual. See *Twin Oaks Condominium Assn., Inc.* v. *Jones*, 132 Conn. App. 8, 11, 30 A.3d 7 (2011) ("[t]he conclusion of negligence is necessarily one of fact"), cert. denied, 305 Conn. 901, 43 A.3d 663 (2012); see also *Gurguis* v. *Frankel*, supra, 168 (reviewing challenge to finding of causation under clearly erroneous standard).

Because the court concluded that the plaintiff's injuries were caused, at least in part, by an exacerbation of a prior condition, a discussion of the eggshell plaintiff doctrine is relevant to our inquiry. "The eggshell plaintiff doctrine states that [w]here a tort is committed, and injury may reasonably be anticipated, the wrongdoer is liable for the proximate results of that injury, although the consequences are more serious than they would have been, had the injured person been in perfect health. . . . The eggshell plaintiff doctrine is not a mechanism to shift the burden of proof to the defendant; rather, it makes the defendant responsible for all damages that the defendant legally caused even if the plaintiff was more susceptible to injury because of a preexisting condition or injury. Under this doctrine, the eggshell plaintiff still has to prove the nature and probable duration of the injuries sustained." (Internal quotation marks omitted.) *Iazzetta* v. *Nevas*, 105 Conn. App. 591, 593 n.4, 939 A.2d 617 (2008); see also W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 43, p. 292.

At trial, one of the plaintiff's treating physicians, David L. Kramer, testified as an expert witness with respect to her treatment and the cause of her accelerated need for surgery. Kramer testified that although he "did come up with an admittedly arbitrary apportionment, [he] still assigned 5 percent, or half of her accelerated need for surgery, to an underlying and natural degenerative condition." The defendant argues that Kramer's opinion was arbitrary, and that this statement indicates that the cause of her accelerated need for surgery was her degenerative condition. The defendant's argument misses the point and takes Kramer's testimony out of context.

Kramer testified that it was his medical opinion that "at the end of the day a lot of this is degenerative in nature, but to some extent, as far as [he] understood it, [the plaintiff's] clinical picture deteriorated after the fall, and there may have been some acceleration in the need for surgery subsequent to that fall, and so to the extent that [he] had already minimized her impairment rating, [he] still apportioned a significant percentage of that to an underlying degenerative condition." Specifically, Kramer testified that in his opinion, the plaintiff's

fall "may have contributed to some accelerated deterioration" leading to her subsequent medical treatment. Moreover, Kramer testified that spinal stenosis, like other advanced conditions, may show significant damage when viewed through a radiological image, but an individual with such a condition may feel no effects or be only slightly affected by the condition in her daily life and not require extensive medical treatment.[7]

A plaintiff with a "dormant" condition, such as the plaintiff's preexisting spinal stenosis here, is entitled to recover full compensation for a resulting disability. See *Tuite* v. *Stop & Shop Cos.*, 45 Conn. App. 305, 310–11, 696 A.2d 363 (1997). Contrary to the defendant's argument, the court was not required to find that the plaintiff's medical treatment and costs were "solely the result of the plaintiff's fall" in order to recover full compensation from the defendant. Instead, the proper inquiry to determine whether the defendant was liable for all the medical costs resulting from the plaintiff's fall is whether the fall was a "substantial factor in bringing about the plaintiff's injuries." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 433, 820 A.2d 258 (2003). In the present case, the court found that the plaintiff's fall was a substantial factor in bringing about her injuries and that finding is supported by the record. It was not illogical to conclude that all of the medical costs were substantially caused by the fall, even if the plaintiff had a preexisting condition.

In addition to Kramer's testimony that the plaintiff's fall was a significant factor in her accelerated need for surgery, the relevant medical records admitted into evidence indicate that the plaintiff began significantly complaining of chronic back pain to Dr. Sanjay Gupta shortly after the incident and prior to seeking surgical treatment from Kramer. The record also includes Fusco's testimony and the plaintiff's medical records, which indicate that prior to the fall, despite the radiological presence of her preexisting condition, the plaintiff led an active and independent lifestyle. Parenthetically, there is nothing in the record to suggest that an intervening event broke the chain of causation.

In short, the court's conclusion that the plaintiff's fall was a substantial factor in exacerbating her preexisting condition of spinal stenosis and, therefore, that the defendant was liable for all of the medical costs resulting therefrom is supported by the record. Accordingly, the court's findings relating to this claim are not clearly erroneous, nor are the conclusions unreasonable.[8]

## II

The defendant also claims that the court abused its discretion in denying its motion in limine seeking to exclude an expert witness' testimony. Prior to the intro-

duction of Kramer's deposition testimony, the defendant made a motion in limine to exclude his testimony on the ground that he "lacked a factual basis upon which to predicate an opinion that claimed damages were related to the alleged occurrence." The court reserved decision on the motion pending evidence at trial. Later, in its memorandum of decision, the court denied the defendant's motion in limine. On appeal, the defendant claims that the court abused its discretion in admitting Kramer's testimony. We disagree.

As an initial matter we note our standard of review. "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Desrosiers* v. *Henne*, 283 Conn. 361, 365, 926 A.2d 1024 (2007).

In its memorandum of decision, the court noted the defendant's prior motion in limine to exclude Kramer's testimony on the grounds that he "lacked a factual basis upon which to predicate an opinion that claimed damages were related to the alleged occurrence." The court denied the motion and stated in relevant part: "Having taken into consideration the totality of the evidence offered at trial, the court has denied the defendant's motion in limine, which seeks the preclusion of Dr. Kramer's testimony, and has reviewed that deposition testimony and has given it the weight which the court finds it deserves."

In the court's later articulation regarding its denial of the defendant's motion in limine pertaining to this claim, the court stated in relevant part: "In the instant case, the court found that the facts upon which Dr. Kramer's opinions are predicated are not without substantial value. His report states that based on the patient's history, as she reported it to him, and as set forth in the records of Dr. [S. Javed Shalid, a neurologist] and Dr. [David S. Kloth, a pain management specialist], which he reviewed, there was a factual basis on which to form his opinions that the fall was a significant factor in the need for her subsequent lumbar decompression, her increase in back pain and her lack of tolerance for standing and walking. The court found that Dr. Kramer's opinions were based on reasonable probabilities rather than mere speculation and, for that reason, they were admissible in establishing causation."

Our standard regarding the admissibility of expert testimony is well settled. "Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the

court or jury in considering the issues. . . . In other words, [i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Citations omitted; internal quotation marks omitted.) *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 158, 971 A.2d 676 (2009); see also Conn. Code Evid. § 7-2.[9]

We begin with the defendant's argument that Kramer lacked a sufficient factual basis for his opinion that the plaintiff's fall caused her accelerated need for surgery. The record indicates that the plaintiff advised Kramer of her medical history when she initially met with him on June 21, 2012. During this time, the plaintiff "complained of symptoms consistent with lumbar spinal stenosis, namely an inability to stand and walk for any length of time. She described a spinal history which was significant for three prior surgical procedures performed in the distant past." The plaintiff also informed Kramer that "she was involved in a slip and fall, subsequent to which her symptoms of spinal stenosis seemed to have progressed." Furthermore, in Kramer's narrative summary regarding the diagnosis and treatment of the plaintiff, Kramer concluded, inter alia, that "[w]ithin a reasonable degree of medical probability, the fall of June 16, 2010 seems to have intensified this patient's symptoms of spinal stenosis. Based upon this patient's history, the fall was a significant factor in the need for her subsequent lumbar decompression." This narrative was introduced into evidence at trial.

"[O]ur case law is clear that a physician's medical opinion is not inadmissible because it is formed, in whole or in part, on the basis of hearsay statements made by a patient. See *George* v. *Ericson*, 250 Conn. 312, 320, 736 A.2d 889 (1999) (although "[i]t is the general rule that an expert's opinion is inadmissible if it is based on hearsay evidence . . . [o]ne exception to this rule . . . is the exception which allows a physician to testify to his opinion even though it is based, in whole or in part, on statements made to him by a patient for the purpose of obtaining from him professional medical treatment or advice incidental thereto" [citation omitted; internal quotation marks omitted]). The rationale for this exception is that "the patient's desire to recover his health . . . will restrain him from giving inaccurate statements to a physician employed to advise or treat him." (Internal quotation marks omitted.) *Milliun* v. *New Milford Hospital*, 129 Conn. App. 81, 96, 20 A.3d 36 (2011), aff'd, 310 Conn. 711, 80 A.3d 887 (2013).

Kramer's reliance on the plaintiff's statements to him pertaining to her medical history did not, then, render his opinion factually baseless. Moreover, the plaintiff's recitation of her medical history to Kramer was reinforced by other medical records admitted into evidence, which were also relied on by Kramer, describing her complaints regarding back pain shortly after the fall

and the extensive treatment she received thereafter. We thus find no merit to the defendant's argument that Kramer lacked a sufficient evidentiary basis on which to base his opinion.

Finally, the defendant challenges the admission of Kramer's opinion by again taking issue with Kramer's division of the cause of the plaintiff's 10 percent spinal stenosis injury equally between her preexisting condition and the fall, and his statement that it was "an admittedly arbitrary apportionment . . . ." We addressed this issue in part I C of this opinion. There, we noted that the defendant took the challenged statement out of context. Although the precise calculation of the apportionment was characterized by Kramer as somewhat arbitrary, it was nonetheless his medical opinion that the plaintiff's fall was a significant factor in causing her accelerated need for surgery. Kramer's opinion was supported by the plaintiff's medical history, as evidenced by the plaintiff's conversations with Kramer and her medical records.

Furthermore, as noted previously in this opinion, Kramer opined that the plaintiff's fall was a factor contributing to her accelerated need for surgery and that her symptoms appeared to progress significantly after the fall. Kramer also testified that his apportionment was "admittedly arbitrary . . . ." This statement is not necessarily inconsistent with a finding that the fall was a substantial factor; in any event, it is "the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Emphasis omitted; internal quotation marks omitted.) *Palkimas* v. *Fernandez*, supra, 159 Conn. App. 133. In the present case, the court, as the arbiter of credibility, was free to credit some, all or none of Kramer's testimony regarding his conclusion that the plaintiff's fall exacerbated her preexisting condition.

We thus conclude that, in light of the sufficient evidentiary foundation supporting Kramer's testimony and his conclusion that the plaintiff's fall was a substantial contributing factor with respect to the plaintiff's accelerated need for surgery, his opinions had reasonable foundation.[10] Accordingly, the court did not abuse its discretion in admitting Kramer's testimony.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In its memorandum of decision, the court noted that the defendant raised several special defenses alleging that the plaintiff "[1] failed to keep and maintain a reasonable and proper lookout; [2] failed to make reasonable and proper use of her senses and of her faculties; [3] failed to take the necessary and proper precautions to observe the conditions then and there existing; [4] failed to be watchful of her surroundings; [5] failed to use reasonable care for her own safety commensurate with the existing circum-

stances and conditions; and/or [6] failed to take into account a condition that was open and obvious; [7] failed to observe and avoid whatever dangers or conditions of dangers she alleges to have been presented at said time and place; [8] failed to be watchful of where she was walking and stepping; and/or [9] [f]ailed to use reasonable care for her own well-being/safety under the conditions and circumstances then and there existing."

[2] During the pendency of this appeal, the defendant filed a motion for articulation, which the court denied. The defendant then filed a motion for review of the trial court's decision denying the relief requested therein, which this court granted. The trial court then issued an articulation in compliance with this court's order. The court's articulation is discussed in more detail in this opinion.

[3] The parties erroneously used the word "divot" to refer to a shallow hole or decompression in the surface. From the photographs introduced into evidence, one can see, perhaps, some similarity to the disturbance of turf caused by a golf club. A "divot", however, is the turf dislodged by the swing, not the resulting hole. Merriam-Webster's Collegiate Dictionary (11th Ed. 2003). With this reservation, we will use the same terminology as the parties.

[4] Other jurisdictions have adopted a *de minimis* or trivial defect rule in which an alleged defect can be held to be insignificant or trivial as a matter of law. See, e.g., *Czochanski* v. *Tishman Speyer Properties, Ltd.*, 45 Fed. Appx. 45, 47 (2d Cir. 2002) ("New York courts often rely on the judge's examination of photographs to determine whether a defect is trivial as a matter of law"); *Ursino* v. *Big Boy Restaurants of America*, 192 Cal. App. 3d 394, 399, 237 Cal. Rptr. 413 (1987) (identifying trivial defect rule as procedural "check valve" to avoid imposing absolute liability upon property owner); *Gleason* v. *Chicago*, 190 Ill. App. 3d 1068, 1069–70, 547 N.E.2d 518 (1989) (affirming court's grant of summary judgment because alleged defect too slight to be actionable).

[5] The court found that the walkway where the plaintiff fell was "a convergence of large, well-worn slabs of stone or some concrete material. The paint on the slabs is worn and flaked." On appeal, the defendant has not specifically contested the length of time that the defect existed.

[6] The defendant also argues that this court should review the photographs depicting the divot de novo. We disagree. We are cognizant that the trial court remains in a superior position to credit and weigh the evidence as it did in this case, including the photographs. As noted previously, the proper inquiry regarding the court's factual findings is whether the trial court could reasonably have drawn the inferences it did from the evidence presented. See *Cagianello* v. *Hartford*, 135 Conn. 473, 476, 66 A.2d 83 (1948). In light of our conclusion that the court's findings were not clearly erroneous, we need not further address this claim.

[7] Kramer testified in relevant part during his deposition: "[N]ot surprisingly, eighty year old people have the ugliest looking X-rays and [magnetic resonance imaging] scans, and yet, as a group, they tend to have one of the lower incidents of neck and lower back pain. So, tempting as it is to look at that time and X-ray that shows severe arthritis, it does not necessarily require treatment.

***

"[The plaintiff] was functioning apparently at a reasonably high level with radiographically severe spinal stenosis and may have been more vulnerable to even an innocuous physical insult like the fall she described. We see that all the time in the emergency room where elderly people have been living their lives and experiencing their subclinical degenerative changes with ongoing narrowing of the spinal canal and then they have a little slip and fall or a little car accident, and they become catastrophically [a]ffected if it's in the neck, for instance."

[8] In a related claim, the defendant contends that the trial court's articulation shifted the burden of proof to the defendant to prove that the plaintiff's expenses were not caused by her fall. Specifically, the defendant challenges the following portion of the court's articulation: "The defendant offered no evidence or testimony which would permit the court to find that any of those expenses were incurred for anything other than the fractures which she sustained as a result of her fall on the defendant's premises on June 6, 2010, and the exacerbation of her preexisting back injuries."

For the following reasons we disagree with this claim. When a party claims that the trial court applied an incorrect burden of proof, an appellate court does not presume error in the absence of a clear expression of what burden the court actually employed. See *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 131, 981 A.2d 1068 (2009). It appears to this court that the challenged

language simply reiterated that the plaintiff had satisfied her burden and noted that there was no evidence introduced to the contrary. The language was a comment on the state of the evidence, not on the burden of proof. In any event, we do not presume error on the part of the trial court. *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 145, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014).

[9] Section 7-2 of the Connecticut Code of Evidence provides: "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

[10] At the conclusion of its brief, the defendant, without any further analysis, claims that Kramer's opinions were not expressed to a reasonable degree of medical certainty. We will not review claims not supported by analysis. See *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 164–65, 20 A.3d 702 (2011).

---