******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## NOEMI WALENCEWICZ *v.* JEALOUS MONK, LLC
### (AC 46362)

Bright, C. J., and Alvord and DiPentima, Js.

*Syllabus*

The defendant restaurant appealed from the trial court's judgment for the plaintiff awarding her damages as a result of injuries she sustained when she slipped on a loose decal and fell in the defendant's premises. The defendant claimed, inter alia, that the trial court improperly denied its motions to overturn the jury's verdict. *Held*:

The trial court correctly denied the defendant's motions for a directed verdict and to set aside the verdict, as the evidence was sufficient for the jury to find that the defendant had constructive notice of the loose decal and that the decal in fact caused the plaintiff's injuries.

The trial court's failure to instruct the jury on the definitions of negligence and reasonable care constituted harmless error, the court's instructions having set forth the plaintiff's allegations of negligence, the relevant elements of a premises liability claim and the applicable duties that the defendant owed to the plaintiff.

Argued May 22—officially released October 1, 2024

*Procedural History*

Action to recover damages for the defendant's negligence, brought to the Superior Court in the judicial district of New London, where the court, *Young, J.*, denied the defendant's motion for summary judgment; thereafter, the case was tried to the jury before *Jacobs, J.*; subsequently, the court, *Jacobs, J.*, denied the defendant's motion for a directed verdict; verdict for the plaintiff; thereafter, the court, *Jacobs, J.*, denied the defendant's motions for a directed verdict and to set aside the verdict, and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed*.

*Daniel J. Krisch*, with whom, on the brief, was *Julie A. Lavoie*, for the appellant (defendant).

*Caitlyn S. Malcynsky*, for the appellee (plaintiff).

*Opinion*

BRIGHT, C. J. In this premises liability action, the defendant, Jealous Monk, LLC, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Noemi Walencewicz. On appeal, the defendant claims that the court improperly (1) denied the defendant's motions for a directed verdict and to set aside the verdict because the plaintiff failed to present sufficient evidence to support the jury's findings that the defendant had constructive notice of the specific defect and that the specific defect caused her injuries, and (2) refused to charge the jury on the definitions of negligence and reasonable care. We affirm the judgment of the trial court.

At trial, the jury was presented with evidence of the following relevant facts. The defendant owns and operates the Jealous Monk restaurant in Mystic, a section of the town of Stonington. On Sunday, December 29, 2019, the restaurant opened at 10:30 a.m., and the plaintiff and her friend Sarah Johnson arrived for brunch at about 10:45 a.m. As the hostess led the plaintiff and Johnson to a "low top table on [the] right-hand side as soon as you walk into the restaurant," the plaintiff, who was wearing high heel boots with "chunky heels," slipped and fell when she stepped from the tile floor in the bar area onto the wood floor in the dining area.

The hostess had seated approximately five tables before the plaintiff arrived at the restaurant, but only one of those tables was in the dining area where the plaintiff fell. Lisa Paterno, who was seated at that table with a few other people, saw the plaintiff slip on something, but she did not see what it was. After the plaintiff fell, however, Paterno saw a decal of the Batman logo (Batman decal) on the floor near the plaintiff's feet, and she assumed that the decal had caused the plaintiff to slip and fall because she did not see any other reason

for the fall, such as water, salt, or sand on the floor. The Batman decal was "a laminated plastic material" that was "eight to ten inches by four to six inches" in size. Although the decal also was described as a sticker, it appears that it was still adhered to its plastic backing, and not the floor, because a patron picked it up from the floor and gave it to the hostess after the plaintiff fell. A slightly smaller version of the decal was admitted into evidence at trial by agreement of the parties, and that sticker is adhered to a clear plastic backing. Although the plaintiff did not see the Batman decal before she fell, someone pointed it out to her immediately after she fell, and it was located near her feet. Once the plaintiff was able to stand, she exited the restaurant to seek medical treatment. As a result of the fall, the plaintiff suffered extensive injuries to her left arm and elbow, which required multiple surgeries to repair, and she also suffered less extensive injuries to her right elbow.

In September, 2020, the plaintiff initiated the underlying action against the defendant. The operative amended complaint, dated January 12, 2021, set forth a claim of negligence based on premises liability. Specifically, the plaintiff alleged that the defendant was negligent in failing "to conduct or [cause] to be conducted, reasonable and proper inspections of the floor area where the plaintiff fell"; "to remedy or correct the hazardous condition of the floor area when it could and should have done so"; "to warn the plaintiff and others of the hazardous condition of the floor area"; "to have adequate and proper maintenance and inspection procedures in place to ensure safe conditions of the floor for the plaintiff and others"; "to maintain the floor in a safe condition for the plaintiff and others when it could and should have done so"; and "to have [the foreign object] removed when it could, and should, have done so." The defendant denied any negligence and

raised the special defense that the plaintiff was contributorily negligent.[1]

The defendant moved for summary judgment, arguing that "the undisputed facts establish, as a matter of law, that the plaintiff [would] be unable to prove actual or constructive notice of the alleged defective condition." The plaintiff filed an objection to the motion for summary judgment, arguing that "there is a clear issue of material fact . . . as to whether the defendant had constructive notice of a foreign object which contributed to the plaintiff's fall, namely, a 'Batman' decal on the floor of the restaurant." The court agreed with the plaintiff and denied the motion.

The case proceeded to a jury trial, and the parties filed proposed jury instructions before trial. The evidence portion of the trial spanned a single day on December 19, 2020. At trial, it was undisputed that the plaintiff was a business invitee and that, therefore, the defendant owed her a duty to keep the premises in a reasonably safe condition. The central issues were whether the Batman decal caused the plaintiff's fall and whether the defendant had notice of the Batman decal.

The plaintiff presented testimony from Johnson, Paterno, herself, and several of the defendant's former employees who were working at the restaurant on the day of the accident: Dylan Sheak, a restaurant and bar manager who arrived after the plaintiff fell; Devon Lyon, the hostess on the day of the accident; and Alicia O'Neill, the restaurant manager who was on duty when the plaintiff fell. Sheak and Lyon did not testify at trial, but transcripts from their depositions were read into the

---

[1] "[A]lthough Connecticut has adopted the doctrine of comparative negligence; see General Statutes § 52-572h (b); our statutes retain the term contributory negligence. See, e.g., General Statutes §§ 52-114 and 52-572h (b)." (Internal quotation marks omitted.) *Wager* v. *Moore*, 193 Conn. App. 608, 610 n.2, 220 A.3d 48 (2019).

record. The plaintiff also presented various documentary evidence, including accident reports prepared by the defendant, medical reports from several different doctors, photographs of both the interior and exterior of the defendant's premises, and a replica of the Batman decal.

Sheak testified that the night before the accident the restaurant would have closed at "[a]bout midnight" and that cleaning is performed "[a]bout a half an hour after closing, and before opening." He explained that an outside contractor cleans the floors after the restaurant closes, "and then the duties of the opening staff are also to tidy and clean." Sheak also discussed a "Customer Accident/Incident Report" that he prepared in accordance with the defendant's policies and procedures. That report indicated that the location where the plaintiff fell was clean and dry immediately after the accident and that the area had been last checked at 10:30 a.m. by the "opening staff." There also was a notation by Lyon, stating "BAT sticker on floor."

O'Neill testified that she arrived at the restaurant between 8:30 and 9 a.m., and "[c]hairs were still up when [staff] came in in the morning, and I had the host sweep the restaurant. And I had the servers, before we opened, do a spot sweep in all their sections." She further testified that the defendant's employees check their areas in the morning, and she agreed that, if a foreign object was left on the floor the night before, the defendant had two chances to identify it and remove it—"[o]ne, by the cleaning crew at night and . . . second, by the cleaning crew in the morning . . . ." Lyon likewise testified that a cleaning crew would "do a full cleaning of the entire restaurant" after it closed. As to whether the Batman decal could have been dropped on the floor by a patron after the restaurant opened, Lyon did not remember there being anyone else in the area where the plaintiff fell, aside from the five or six

people at Paterno's table. Paterno testified that no one at her table had brought the Batman decal into the restaurant and that she did not know how it came to be on the floor near the plaintiff's feet.

At the close of the plaintiff's evidence, the defendant's counsel moved for a directed verdict on the ground that the evidence was insufficient to establish the defendant's liability for the plaintiff's injuries. The plaintiff's counsel objected, arguing that whether the defendant had constructive notice of the defect is a factual question for the jury. Specifically, the plaintiff's counsel argued: "I think the facts include the proposition that she fell due to this, based on all the testimony we had, due to the Batman sticker. That they have a policy of cleaning the restaurant at night. They have a policy of sweeping or checking it in the morning, that this—no one at . . . Paterno's table, which is the only table in the area occupied, played, or had the Batman sticker with them. . . . [T]herefore, the inference is that a child the night before dropped it and they never found it. They didn't detect it in their inspection. They should have, they didn't, and that's what caused her to fall. I think that's the chain of events which occurred. I think all of that evidence is in front of the jury. So, I think it's a jury question and not a directed verdict." The court agreed with the plaintiff and denied the motion for a directed verdict.

The defendant called a single witness, Michael Corso, who was the general manager of the restaurant at the time of the accident. Corso testified that, after the restaurant closed each night, staff would put the chairs up on the tables, and a cleaning crew then would vacuum and mop the floors in the front and back of the premises. Corso explained that staff would inspect the floor of the restaurant "because, when [staff] puts chairs down there tends to be debris, or sometimes stuff on the floor. So, it's typically, just, you know, a

dustpan and a broom, just for small kind of debris on the floor." During cross-examination, the following exchange occurred between the plaintiff's counsel and Corso:

"[The Plaintiff's Counsel]: Would you expect your night crew to find foreign objects and remove them as part of their duties?

"[Corso]: Yes.

"[The Plaintiff's Counsel]: Would you expect the morning crew to find foreign objects and remove them as part of their duties?

"[Corso]: I would hope so."

Following Corso's testimony, the defense rested its case.

The next day, the court held a brief charging conference and conferred with counsel regarding the proposed jury charge. The court referred to a prior discussion about the proposed instructions and noted that the plaintiff's counsel had proposed omitting a general negligence charge because such charge was subsumed by the defective premises charge. The court stated that it had concluded that it was necessary for the jury to be given the definition of negligence. The following discussion then occurred between the court and the parties' counsel.

"The Court: . . . [T]he defective premises elements are really a subset of general negligence. It [is] a particularized form of general negligence. So, without knowing what general—what negligence is, how do they make a finding one way or the other as to whether this defendant was negligent, taking into account all of the elements of a defective premises claim?

"[The Plaintiff's Counsel]: Well, I understand, but . . . I don't think I have to prove both negligence and

defect in separate—as separate elements of proof. . . . That's the way it's laid out. We have to prove all the following, and two and three are separate. So, my burden is now increased. I have to prove defect, and I have to prove negligence. If I was on the jury, I'm thinking, okay, he has to prove defective premises. He has to prove a defect. He has to prove—

"The Court: But you have to prove negligence. And negligence is reasonable care under the circumstances then and there existing. But—and reasonable care, under the circumstances, then and there existing in a defective premises [case] takes into account all of the elements of a defective premises claim.

"[The Plaintiff's Counsel]: I just think, you know, with all due respect, I think it's confusing the way it's laid out, and I think it puts a higher burden on the plaintiff than in—this is not my first defective premises case, not your first defective premises case. . . . I don't think this is the way the judicial department website has it laid out. I may be wrong on that, but I had looked at it, and I think the charge I submitted was based on the judicial department website version.

"[The Defendant's Counsel]: I think, Your Honor, it has to be this way. I think the jury needs the definition, and just put it out with a simple sentence that's on paragraph two. There's no telling if they know what you're talking about or not. I think the way you have it laid out is necessary.

"[The Plaintiff's Counsel]: What I propose—it goes status of the plaintiff, which we notice. Notice, constructive notice, duty, knowledge to principal, control, nature of claim. It talks about unsafe condition. I remember looking at the website. I just—I think the website does not have a double burden the way it's laid out on page 11. So, I just think they're going to get that

and say, what—you know, really what's going on here? He has to prove this and he has to prove that?

"The Court: But I keep asking myself, in considering the second element, if they're just told generally that you must consider whether the defendant was negligent in the way [it] took care of the premises, how do they make a finding? How do they make a finding if they aren't told what negligence is? I mean, I confess [that] I had never thought of this before going through this and your calling this to my attention. I hadn't thought of it when trying a defective premises claim. I hadn't thought of it in the past while presiding over one, but—

"[The Plaintiff's Counsel]: I mean, plus it's not—you know, it's not just negligent in the way [it] took care [of the premises]. . . . [I]t's not just that they took care of the premises, they failed to do a reasonable inspection, they failed to make the situation safe. I mean, there was like five or six allegations, which are broader than just that, and you—actually, you include them later on. . . . But this is not consistent with what our complete, you know, all the allegations are. I just think one of those two things . . . has to come out because defining that [it] was—the defendant was negligent in the way it took care of the premises would have to necessarily include the fact that it was—there was a defect. It's . . . baked into it. If they were negligent, then there had to be a defect. They can't be negligent without a defect.

"The Court: I understand that, but that begs the question, doesn't it—what is negligence?

"[The Plaintiff's Counsel]: I understand why you want to define negligence, but I don't think having laid out—we have to prove both defect and negligence. If you take out that we have to prove defect because that's already baked into the negligence.

"The Court: Right.

"[The Plaintiff's Counsel]: Then that takes away the double burden, I think. I understand your point in terms of defining negligence. And my allegations actually refer to negligence in the second amended complaint. So, I accept that, but I just think that this looks like we have to prove defect on top of negligence, but proving negligence presumes defect. That's my biggest issue.

"[The Defendant's Counsel]: Again, Your Honor, I think the way you have it is completely necessary. And [the issues raised by the plaintiff's counsel] with what are contained in negligence, you include all of the things that he is talking about in that same heading.

"[The Plaintiff's Counsel]: It's the fact that we have two and three. That's the biggest problem. I would delete three and leave in your definition of negligence.

"The Court: You would delete three, the third element?

"[The Plaintiff's Counsel]: Correct. Because to prove negligence, we have to prove—there has to be a defect. Negligence doesn't exist in a void.

"The Court: Right. Alright. Any other exceptions?

"[The Plaintiff's Counsel]: No . . . .

"[The Defendant's Counsel]: No, Your Honor."

After a short recess, the court returned and provided counsel with copies of changes it had made to the proposed instructions. The court stated: "You'll see that I took out the negligence charge, the general negligence charge, and I cut from—I'm sorry, I didn't give you page 13. I cut from page 13, the second full paragraph down to the first whole paragraph on page 14, and then I pasted that into the beginning of the charge on [the] elements of a defective premises claim. So, maybe the

best thing to do is, so there's no confusion here, I'll just have the whole thing reprinted so you can see exactly what I did." After another short recess, the following colloquy occurred:

"The Court: . . . Counsel, have you had an opportunity to look at the latest iteration of the negligence charge?

"[The Plaintiff's Counsel]: Yes, Your Honor. . . . I still have the same issues we had before, so that— but I understand Your Honor is not gonna change his position. So, we just have—

"The Court: Well, I cut it out. . . . It's not in there. . . . That whole thing is out. . . .

"[The Plaintiff's Counsel]: Got it. Okay, Your Honor, then I'm good. . . .

"[The Defendant's Counsel]: Your Honor, I think what you took out should have been left in. I think the jury needs that definition, and now they're not getting it. I take exception to this. Thank you."

The jury thereafter returned, and counsel delivered their closing arguments. Following the closing arguments, the court instructed the jury without specifically defining "negligence" and "reasonable care." The defendant's counsel took exception for the same reasons "raised before . . . ." The case was submitted to the jury, which returned a plaintiff's verdict that same day. The jury found that the defendant was 75 percent liable for the plaintiff's injuries and that the plaintiff was 25 percent liable for her own injuries. The jury awarded the plaintiff $893,922.50 in damages, representing 75 percent of her total damages.

On December 28, 2022, the defendant filed motions for a directed verdict and to set aside the verdict on

the basis of insufficient evidence.[2] In both motions, the defendant renewed its argument that there was no evidence that the plaintiff in fact slipped on the Batman decal or that the alleged defect had existed for a sufficient period of time to establish that the defendant should have discovered it. The court denied both motions on March 8, 2023, concluding, "on the basis of the evidence and the reasonable inferences which could be drawn therefrom, that a reasonable jury could have found for the plaintiff, as this jury did." This appeal followed.

I

On appeal, the defendant claims that the trial court improperly denied its motions for a directed verdict and to set aside the verdict because the plaintiff failed to present sufficient evidence to support the jury's findings that the defendant had constructive notice of the specific defect and that the specific defect caused her injuries. We address each sufficiency challenge in turn.

As an initial matter, we set forth the applicable standard of review. We exercise plenary review of a court's ruling on a motion for a directed verdict based on a claim of insufficient evidence. See *Curran* v. *Kroll*, 303 Conn. 845, 855, 37 A.3d 700 (2012) ("[w]hether the evidence presented by the plaintiff was sufficient to withstand a motion for a directed verdict is a question of law"); see also *Cockayne* v. *Bristol Hospital, Inc.*, 210 Conn. App. 450, 459, 270 A.3d 713, cert. denied, 343 Conn. 906, 272 A.3d 1128 (2022). "The standards governing our review of a sufficiency of evidence claim are well established and rigorous. . . . [I]t is not the function of this court to sit as the seventh juror when we review

---

[2] The defendant also filed a motion for remittitur, claiming that the verdict "was based on sympathy for the plaintiff and prejudice as against the defendant." The court denied the motion, and the defendant has not challenged that decision on appeal.

the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it. . . .

"We apply this familiar and deferential scope of review, however, in light of the equally familiar principle that there must be sufficient evidence to remove the jury's function of examining inferences and finding facts from the realm of speculation. . . . The jury's verdict cannot be upheld if the jury reasonably and legally could not have reached the determination that [it] did in fact reach or if, without conjecture, [it] could not have found a required element of the cause of action . . . ." (Citations omitted; internal quotation marks omitted.) *Burke* v. *Mesniaeff*, 334 Conn. 100, 127, 220 A.3d 777 (2019); see also *Fisher* v. *Big Y Foods, Inc.*, 298 Conn. 414, 440, 3 A.3d 919 (2010) ("Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.)).

## A

The defendant first claims that the plaintiff failed to present sufficient evidence to establish that the defendant had constructive notice of the specific defect. It argues that "[*n*]*o one* saw the Batman decal until *after* the plaintiff slipped and fell. . . . Thus, there is no

evidence [regarding] how long the Batman decal had been on the floor—let alone that it had been there for a reasonable length of time. . . . Nor could the jury *reasonably* have inferred this crucial fact from testimony that there were not normally decals on the floor at [the restaurant]; the floor was cleaned after the [restaurant] had closed the previous evening; the floor was inspected that morning prior to the [restaurant's] opening; the [restaurant] was only open for approximately fifteen minutes before the plaintiff fell; and none of the customers at the [restaurant] that morning had children with them. An inference from nothing leaves nothing. . . . The jury needed 'some basis of definite facts' to find notice; the plaintiff gave it none." (Citations omitted; emphasis in original.) We are not persuaded.

"[A] premises liability claim is a negligence cause of action. . . . The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Citation omitted; internal quotation marks omitted.) *Diaz* v. *Manchester Memorial Hospital*, 161 Conn. App. 787, 791 n.4, 130 A.3d 868 (2015). "A business owner owes its invitees a duty to keep its premises in a reasonably safe condition." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012). Nevertheless, "business owners do not breach their duty to invitees by failing to remedy a danger unless they had actual or constructive notice of that danger." (Internal quotation marks omitted.) *Diaz* v. *Manchester Memorial Hospital*, supra, 792. Such "notice is required because, as a general matter, it is unfair to hold a storeowner liable for injuries to customers resulting from an unsafe condition unless the storeowner knew or should have known of that unsafe condition. . . . [T]he basic notice requirement springs from the [notion] that a dangerous condition, when it occurs, is somewhat out of the ordinary. . . . In such

a situation the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employees') acts." (Internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 787, 918 A.2d 249 (2007).

Accordingly, the plaintiff was required to "allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [her injury] or constructive notice of it." (Internal quotation marks omitted.) Id., 776; accord *Bisson* v. *Wal-Mart Stores, Inc.*, 184 Conn. App. 619, 628, 195 A.3d 707 (2018). "The controlling question in deciding whether the [defendant] had constructive notice of the defective condition is whether the condition existed for such a length of time that the defendants should, in the exercise of reasonable care, have discovered it in time to remedy it. . . . What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case." (Citation omitted; internal quotation marks omitted.) *Riccio* v. *Harbour Village Condominium Assn., Inc.*, 281 Conn. 160, 163–64, 914 A.2d 529 (2007). "It is settled that circumstantial evidence can establish constructive notice." *Sokolowski* v. *Medi Mart, Inc.*, 24 Conn. App. 276, 287, 587 A.2d 1056 (1991).

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to sustaining the jury's verdict, we conclude that the evidence was sufficient for the jury to find that the defendant had constructive notice of the Batman decal. Although there was no direct evidence of how long the Batman decal had been on the floor before the plaintiff fell, there was circumstantial evidence from which the jury reasonably could infer that the decal had been there since before the restaurant opened that day. In particular, the evidence established that there "tends to be debris" on

the floor after the defendant's staff puts chairs down in the morning; the plaintiff slipped and fell fifteen minutes after the restaurant had opened; only one other table had been seated in the area where the plaintiff fell; and no one seated at that table had brought the Batman decal into the restaurant. On the basis of this evidence, the jury reasonably could have inferred that the Batman decal had been on the floor since either the previous night or earlier that morning when the staff removed the chairs from the tables before the restaurant opened for business.

Furthermore, considering Corso's testimony that the defendant's staff was required to inspect the floors before the restaurant opened each morning to find and remove any debris, and O'Neill's testimony that she instructed the staff to do so on the morning of the accident, it also was reasonable for the jury to conclude that the defendant "should, in the exercise of reasonable care, have discovered [the Batman decal] in time to remedy it." (Internal quotation marks omitted.) *Riccio* v. *Harbour Village Condominium Assn., Inc.*, supra, 281 Conn. 163; see also *Laflin* v. *Lomas & Nettleton Co.*, 127 Conn. 61, 65, 13 A.2d 760 (1940) ("[i]f it appeared that such inspection of the premises as was made by the defendant or his agents ought to have disclosed to them the presence of the toy at the entrance, this would be a basis for a finding of constructive notice and to that extent evidence as to such inspections would be a proper element in the case"); *Kurti* v. *Becker*, 54 Conn. App. 335, 339, 733 A.2d 916 ("jury reasonably could have found that the defendants had constructive notice of their icy driveway because in the performance of a reasonable duty to inspect the premises the defendants would have discovered the defective condition which caused the plaintiff's fall in ample time to remedy it before the accident" (internal

quotation marks omitted)), cert. denied, 251 Conn. 909, 739 A.2d 1248 (1999).

In support of its claim to the contrary, the defendant relies on this court's decision in *Hellamns* v. *Yale-New Haven Hospital, Inc.*, 147 Conn. App. 405, 82 A.3d 677 (2013), cert. granted, 311 Conn. 918, 85 A.3d 652 (2014) (appeal withdrawn May 9, 2014). In that case, the plaintiff slipped on a puddle of water in the hallway of a hospital and brought a negligence action against the hospital based on a theory of premises liability. Id., 407. After a court trial, the trial court rendered judgment for the plaintiff. Id. The court found that the hospital was negligent based in part on the court's finding that a janitor walked by the puddle immediately before the plaintiff fell and could have remedied the defect. Id., 411. The hospital appealed, claiming, inter alia, that the plaintiff failed to establish that it had notice of the defect. Id.

In reversing the judgment on appeal, this court noted that the only evidence presented at trial as to notice was the plaintiff's testimony that a janitor walked by the spill before she fell and the testimony of a hospital employee who observed the spill but was unable to determine the source of the water or how long it had been there. Id., 412–13. We explained that the plaintiff "did not present the janitor, or any other employee of the defendant, to establish for the court that the janitor actually saw the puddle of water before the accident." Id., 413. On the basis of this evidence, we held that the evidence was insufficient to support the court's finding that a hospital employee noticed the defect and could have remedied it before the accident. Id. We reasoned that, "[w]hile circumstantial evidence can establish constructive notice, a plaintiff's assertion that an employee walked past the defect, absent evidence that the employee actually did see the defect, is insufficient. . . . [Likewise, the plaintiff's testimony] establishing

that the defective condition existed a few seconds before the accident is insufficient to establish that the defendant had constructive notice of that defect." (Citation omitted.) Id. Last, this court held that "the plaintiff failed to establish that notice could be imputed to the [hospital] because the plaintiff did not present any evidence to establish that cleaning the specific hallway where the accident occurred was within the janitor's scope of employment." Id.

Although the defendant argues that, "[h]ere, the cupboard is even more bare than in *Hellamns*," there is significant evidence in the present case that was lacking in *Hellamns*. In particular, in *Hellamns*, there was no evidence that the janitor was required to clean the specific hallway where the plaintiff fell; *Hellamns* v. *Yale-New Haven Hospital, Inc.*, supra, 147 Conn. App. 413; whereas, in the present case, there was undisputed evidence that the defendant's staff is responsible for inspecting and cleaning the area where the plaintiff fell and that staff was directed to do so the morning of the accident. In addition, the circumstantial evidence regarding the presence of the Batman decal—namely, that the plaintiff fell shortly after the restaurant had opened for the day, in an area of the restaurant where the only other occupants denied knowledge of the Batman decal, and that the defendant's staff is responsible for inspecting the floors before the restaurant opens each day and should discover any debris on the floor at that time—is markedly different than the limited evidence presented in *Hellamns*. Given these factual differences, the reasoning in *Hellamns* does not alter our conclusion as to the sufficiency of the evidence of constructive notice in the present case. See *Riccio* v. *Harbour Village Condominium Assn., Inc.*, supra, 281 Conn. 163–64 ("[w]hat constitutes a reasonable length of time is largely a question of fact to be determined

in the light of the particular circumstances of a case" (internal quotation marks omitted)).

Similarly, the defendant's reliance on this court's decision in *Bisson* v. *Wal-Mart Stores, Inc.*, supra, 184 Conn. App. 619, is misplaced. In that case, this court affirmed the summary judgment rendered for the defendant because the defendant's evidence "established a forty second maximum time period between the creation of the defect and the plaintiff's fall"; id., 633; which, we explained, was insufficient to put the defendant on notice of the alleged defect. In the present case, however, there was no evidence that the defect existed for a matter of seconds before the plaintiff fell. Instead, the circumstantial evidence regarding when and where the plaintiff fell supports the reasonable inference that the defect had existed since before the restaurant opened for the day. On the basis of that fact, the jury reasonably could have found that, had the defendant inspected the floors before the restaurant opened that day, it would have discovered the Batman decal before the plaintiff fell. Thus, the jury reasonably could have found that the defendant had constructive notice of the defect. See, e.g., *Sokolowski* v. *Medi Mart, Inc.*, supra, 24 Conn. App. 287 ("The jury could have concluded from the totality of the evidence that the spilled aftershave lotion had remained on the floor for more than fifteen minutes. From this fact, the jurors could have inferred that the defendant, in the exercise of reasonable care, should have detected and remedied the condition."); *Schwarz* v. *Waterbury Public Market, Inc.*, 6 Conn. App. 429, 433, 505 A.2d 1272 (1986) (on basis of evidence that milk frequently leaked from containers, jury reasonably could have found "that the condition had existed for a length of time, that a reasonable inspection by the defendant would have discovered the existence of the spilled milk . . . and that, therefore, the defendant had constructive notice of the defective

condition"). Consequently, we conclude that the jury's finding of constructive notice is supported by the evidence in the record.

B

The defendant also claims that the plaintiff failed to present sufficient evidence to establish that the presence of the Batman decal on the floor caused her injuries. The defendant argues that "no one saw the plaintiff slip on the decal. . . . Though Paterno thought that the plaintiff slipped on 'something,' and a patron found the decal nearby, that is—at most—evidence of a 'general condition' and not a specific cause. . . . More is required to remove causation from the realm of speculation." (Citations omitted.) The defendant's claim is unavailing.

"To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." (Internal quotation marks omitted.) *Augustine* v. *CNAPS, LLC*, 199 Conn. App. 725, 729, 237 A.3d 60 (2020). "Circumstantial evidence . . . may provide a basis from which the causal sequence may be inferred." (Internal quotation marks omitted.) *Hall* v. *Winfrey*, 27 Conn. App. 154, 159, 604 A.2d 1334, cert. denied, 222 Conn. 903, 606 A.2d 1327 (1992). Such inferences, however, "must be reasonable and logical, and the conclusions based on them must not be the result of speculation and conjecture." (Internal quotation marks omitted.) Id.

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence from which the jury reasonably could infer the necessary causal connection between the

plaintiff's fall and the Batman decal found on the floor of the restaurant. Specifically, the plaintiff testified that, immediately after she fell, a woman, later identified as Paterno, pointed to the Batman decal on the floor and asked the plaintiff if she slipped on it. Paterno's testimony aligned with the plaintiff's recollection, as Paterno testified that the plaintiff appeared to slip on something and that, immediately after the plaintiff fell, she saw the Batman decal on the floor near the plaintiff's feet. Paterno further explained that she had assumed that the decal had caused the plaintiff to slip and fall because the decal was near the plaintiff's feet and there was no other explanation for the fall, such as water, salt, or any other slippery substance. From this evidence, the jury reasonably could infer that the plaintiff would not have fallen in the manner that she did unless the Batman decal caused her to slip and fall. See, e.g., *Rockhill* v. *Danbury Hospital*, 176 Conn. App. 39, 54, 168 A.3d 630 (2017) (concluding that it was reasonable to infer divot in sidewalk caused plaintiff to fall based on evidence that divot was only defect in area where plaintiff fell and plaintiff's description of sensation during fall).

The facts involved in the present case differ significantly from those involved in *Monahan* v. *Montgomery*, 153 Conn. 386, 216 A.2d 824 (1966), on which the defendant relies. In that case, the decedent fell while he was raking leaves and sticks along the driveway in front of a garage he shared with his neighbor, the defendant. Id., 387–88. Nobody witnessed the decedent fall, but he stated to his wife, the plaintiff, "and to a neighbor that he tripped over a branch and fell. He never pointed out or identified any particular branch." Id., 388. After the decedent died, the plaintiff filed a negligence action against the defendant, alleging that the defendant failed to maintain her premises in a reasonably safe condition

due to the branches and debris in and along the driveway. Id. The jury returned a verdict for the plaintiff, and the trial court denied the defendant's motions for a directed verdict, for judgment notwithstanding the verdict, and to set aside the verdict. Id., 389. The defendant appealed, and our Supreme Court reversed the trial court's judgment and remanded the case with direction to render judgment for the defendant. Id., 389, 393.

In reversing the judgment, the court explained that "[t]here was an abundance of evidence as to the existence of a general condition naturally productive of the existence on the driveway of a branch over which a person raking the area could fall and sustain injury. As we have noted, however, proof merely of the existence of such a general condition is not sufficient." Id., 391. The court reasoned that "[t]he plaintiff's claim of proof is that the decedent raked up a pile of branches and leaves in front of one stall and then started to rake up a pile in front of the other stall and that '[w]hile in the driveway he tripped over a broken branch' and fell. No particular branch was ever identified. Whether it was a specific isolated branch or a component part of an accumulation of debris is not disclosed. . . . For all that appears the branch may have been a part of the debris which the decedent himself had just collected and gathered into a pile in front of the garage. Nor is there any evidence at all as to how and to what extent the branch was a causative factor in the decedent's fall." Id., 391–92. Thus, the court concluded that "there was no evidence from which the jury could reasonably conclude that the claimed specific defect . . . was a material factor in causing the injuries which the decedent sustained." Id., 392–93.

The defendant argues that, "as in *Monahan*, no one saw the plaintiff slip on the decal. . . . Though Paterno thought that the plaintiff slipped on 'something,' and a patron found the decal nearby, that is—at most—

evidence of a 'general condition' and not a specific cause. . . . More is required to remove causation from the realm of speculation." (Citations omitted.) The defendant's analogy fails.

In the present case, unlike in *Monahan* v. *Montgomery*, supra, 153 Conn. 391, where "[t]here were no eyewitnesses to the fall, and the only testimony as to the cause was the statement of the decedent at the scene that he fell over a branch," several people witnessed the plaintiff fall and testified about the specific defect—the Batman decal—that they inferred caused the plaintiff to fall because it was the only defect present. Given the evidence presented that the floor was dry and clean at the time of the accident, that the plaintiff slipped on something, and that the Batman decal was located near the plaintiff's feet immediately after she fell, it was reasonable and logical for the jury to infer that the Batman decal in fact caused the plaintiff to slip and fall. See, e.g., *Fisher* v. *Big Y Foods, Inc.*, supra, 298 Conn. 440 ("The evidence presented at trial . . . reasonably supported a finding that the plaintiff had slipped on fruit cocktail syrup that somehow had leaked from a product originating in the defendant's store. Although circumstantial, the evidence in this regard was substantial."); see also *Rockhill* v. *Danbury Hospital*, supra, 176 Conn. App. 54.

C

In sum, the trial court correctly denied the defendant's motions for a directed verdict and to set aside the verdict because the jury reasonably and logically could conclude from the evidence presented that the defendant had constructive notice of the Batman decal and that the Batman decal in fact caused the plaintiff's injuries.

II

The defendant next claims that the trial court improperly refused to charge the jury on the definitions of

negligence and reasonable care. The following additional procedural history is relevant to the defendant's claim.

In its jury charge, the court set forth the plaintiff's negligence allegations, noting that the plaintiff had alleged "that the defendant . . . its agent, servants, and/or employees were negligent in one or more of the following ways, in that (a) [t]hey failed to conduct or cause to be conducted reasonable and proper inspections of the floor area where the plaintiff fell; (b) [t]hey failed to remedy, or . . . correct the hazardous condition of the floor area where they could and should have done so; (c) [t]hey failed to warn the plaintiff and others of the hazardous condition of the floor area; (d) [t]hey failed to have adequate and proper maintenance and inspection procedures in place to ensure safe conditions of the floor for the plaintiff and others; (e) [t]hey failed to maintain the floor in a safe condition for the plaintiff and others when they could and should have done so; and (f) [w]hile they knew or had reason to know of the foreign object on the floor area, they failed to have it removed when they could and should have done so." The court explained that "[t]he plaintiff does not have to prove that the [defendant was] negligent in all of the ways alleged. Proof of any one of those specific acts is sufficient to sustain the plaintiff's burden of proving that the defendant acted negligently."

The court then identified five necessary elements of the plaintiff's cause of action: (1) the premises were under the control of the defendant; (2) the defendant was negligent in the way it maintained the premises; (3) the premises were defective; (4) the defendant had either actual or constructive notice of the defect; and (5) the defendant's negligence was a proximate cause of the plaintiff's injuries. The court instructed the jury that, because the defendant admitted that it was in

control of the premises, the jury must find that the plaintiff established the first element.

As to the second element, that the defendant was negligent in maintaining the premises, the court explained that, "where it is alleged that one who controls property has failed to keep it free from defects that can cause injury, the law further defines the duty of care that is owed to someone such as the plaintiff. . . . As it is admitted that the plaintiff was an invitee, the defendant owed [her] the following duties . . . . The duty to use reasonable care to inspect and maintain the premises, and to make the premises reasonably safe. . . . The duty to warn or guard the invitee from being injured by reason of any defects that the invitee could not reasonably be expected to discover. . . . [T]he duty to conduct activities on the premises in such a way as to not injure the invitee.

"As an invitee, the plaintiff must prove that the defendant failed in the duties that I've just described to you. If the plaintiff has proven this to you, you should next consider the other elements of the defective premises case, but if the plaintiff . . . has not proved the defendant failed in [its] duties as I have just described them to you, then you do not need to consider the other three elements, and you must return a verdict for the defendant.

"Again, the other elements are that the premises was defective, that the defendant knew or reasonably should have known of the defect and corrected [it] or warned the plaintiff, and that such negligence was a proximate cause of the injury.

"The third element is the existence of a defect. The plaintiff alleges that, at the time of the plaintiff's alleged fall, the defendant's premises was in an unreasonably dangerous, defective, and/or unsafe condition. If you

find that the condition of the floor was . . . unreasonably dangerous, defective, and/or unsafe, you must determine whether this rendered the area no longer 'reasonably safe,' which is the term used in the law regarding the defendant's duty. Put another way, you must determine if this circumstance was one that was likely to cause injury to a visitor on that area of the premises. If you find this to be the case, this element is satisfied. If not, then you will have found that no defect existed, and you do not need to consider the remaining elements but must return a verdict for the defendant.

"The fourth element to be proved by the plaintiff is notice. . . . Now, in order for the plaintiff to recover in the absence of proof that the defendant actually knew of the defect, the plaintiff must prove that the defendant had constructive notice. That means that the defendant, using reasonable care, should have known of the unsafe condition in time to have taken steps to correct the condition or to take other suitable precautions. You may consider whether the defendant inspected the floor or caused it to be inspected on a regular basis, or in a reasonable way in determining whether the defendant should have known of the defect. You may consider the length of time the condition had existed in determining whether the [defendant] should have known of the defect had the defendant used reasonable care.

"The notice to the defendant must be of the specific defect that the plaintiff claims caused the injury. It is not enough that the plaintiff proved the existence of certain conditions that would likely produce such a defect, even if such conditions did in fact produce the defect. Our law requires that the notice, whether actual or constructive, be of the very defect that resulted in the plaintiff's injury.

"If you find that the defendant knew or should have known of the defect alleged in this case . . . you must

find that the defendant . . . had knowledge of that same fact. In deciding the issue of notice, the subsidiary question is whether the defect had existed for such a length of time that the defendant, in the exercise of reasonable care, should have discovered it in time to have remedied it or warned the invitee of it prior to the plaintiff's incident. What constitutes a reasonable time is a question of fact for you to determine based on the circumstances you find to have existed in this case. It is not the law that the plaintiff is entitled to compensation merely because she is injured while on the premises controlled by the defendant. The defendant is not required to guarantee the safety of all persons on the premises. Rather, the defendant is only liable for the resulting injuries if the plaintiff meets the burden to prove the necessary elements of a defective premises claim as I . . . have explained them to you.

"There are four elements [that] the plaintiff must prove when it comes to proving proximate cause. This fifth and last element is just that. It's proximate cause. Even if you find all four of the elements that I have just outlined for you, that, in and of itself, does not afford the basis for a verdict for the plaintiff. The plaintiff must prove by a preponderance of the evidence the fifth element, that, as a result of the conduct of . . . the defendant, the plaintiff was injured and suffered in some way, such that the defendant's conduct was the legal cause of the injury. . . .

"[T]o recover damages for any injury, the plaintiff must show by a fair preponderance of the evidence that such injury would not have occurred without the conduct of the defendant. That the conduct of the defendant was the cause in fact. Then, the plaintiff must prove that the conduct of the defendant was a proximate cause of the injury. Proximate cause means that it was a substantial factor in bringing about or actually causing the injury. That is, that the injury or damage

was a reasonably foreseeable consequence of the defendant's conduct. If the conduct of the defendant was a substantial factor in bringing about or actually causing injury to the plaintiff, then this element is satisfied.

"If you find that the plaintiff complains about an injury, which would have occurred even in the absence of the defendant's conduct, or that the negligent conduct of the defendant was not a substantial factor in bringing about the injury of which the plaintiff complains, you cannot award damages for it because the plaintiff would have failed to prove that the defendant's negligence was a proximate cause of her injury.

"Your task is to determine whether the plaintiff suffered injuries and, if so, whether they were caused by the negligence of the defendant."

Before turning to damages, the court instructed the jury on the defendant's special defense of contributory negligence. During this portion of the charge, the court stated: "Now, the defendant has raised a special defense and claims that the plaintiff failed to exercise due care for her own safety. Under our law, the plaintiff is presumed to be exercising due care at the time of the incident. And if the defendant makes a claim to the contrary, the burden is on the defendant to prove it. The defense is that the plaintiff failed to keep a proper lookout, failed to make reasonable use of her senses and faculties, failed to avoid the condition she alleges existed, failed to take reasonable caution—precautions for her own safety, and failed to act reasonably under the circumstances. In other words, the defendant claims that the plaintiff was not acting as a reasonably prudent or careful person would have acted under the circumstances that you find existed at the time. If you find that the defendant has proved that the plaintiff was not using reasonable care for her own safety, such that she is wholly or partially responsible for her own fall, then

the defendant has proven the special defense, and you must consider the plaintiff's negligence in relation to the defendant's negligence. I'll explain what I mean by that.

"In cases such as this one, where the defendant has [pleaded] and claims that the plaintiff was herself negligent, Connecticut law recognizes a legal principle called comparative negligence. The application of the comparative negligence rule may bar any recovery by the plaintiff or reduce any award by the percentage of negligence attributable to the plaintiff. The defendant bears the burden of proving to you by a fair preponderance of the evidence that the plaintiff was negligent. Your first consideration in applying the comparative negligence rule is to consider whether the plaintiff's own negligence was greater than that of the [defendant]. If the plaintiff is more at fault for the accident than the defendant, then she cannot recover any damages, and you must return a verdict for the defendant. If the plaintiff is equally at fault for the accident or less, or not at fault for the accident, you must continue on to the [next] step."

On appeal, the defendant argues that "[t]he jury had no yardstick by which to measure the defendant's conduct and, unfamiliar with the law, may have invented its own. . . . Without being told what negligence and reasonable care are, the jury had to invent its own standards. . . . Moreover, the refusal to define negligence and reasonable care was harmful because it is likely that it affected the verdict." (Citations omitted; internal quotation marks omitted.) The plaintiff responds that the court's charge was not improper because "[t]he concepts of 'negligence' and 'reasonable care' were subsumed by the instructions relating to premises liability [and comparative negligence] and need not have been separately stated . . . ." We conclude that, although the court improperly declined to

instruct the jury as to the definitions of negligence and reasonable care, the error was harmless.

We begin our analysis with the applicable standard of review and well established legal principles regarding preserved claims of improper jury instructions.[3] "A challenge to the validity of jury instructions presents a question of law. Our review of this claim, therefore, is plenary." (Internal quotation marks omitted.) *Ocasio* v. *Verdura Construction*, *LLC*, 215 Conn. App. 139, 151, 281 A.3d 1205 (2022).

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as

---

[3] The defendant's counsel preserved his instructional challenge by filing a request to charge on the definition of "reasonable care" and by taking exception to the court's refusal to define negligence for the reasons stated on the record during the charging conference. See *Brown* v. *Cartwright*, 203 Conn. App. 490, 510, 249 A.3d 59 (2021) ("[t]o preserve [the] exception . . . a party must either submit a written request to charge or state distinctly the matter objected to and the ground of objection" (internal quotation marks omitted)).

In its proposed jury instructions, the defendant requested that the court charge the jury on reasonable care in accordance with the Judicial Branch's model civil jury instruction on reasonable care. See Connecticut Civil Jury Instruction § 3.9-19, available at https://www.jud.ct.gov/JI/Civil/Civil.pdf (last visited September 23, 2024). Specifically, the defendant requested the following language: "In describing the duties involved in this case, I have used the term 'reasonable care.' Reasonable care is defined as the care which an ordinarily prudent or careful person would use in view of the surrounding circumstances. You must determine the question by placing an ordinarily prudent person in the situation of the defendant and ask yourselves: what would such a person have done? Note that it is the care that such a person would have used under the surrounding circumstances, that is, in view of the facts known or the facts of which the party should have been aware at the time. The standard of care required, that of an ordinarily prudent person under the circumstances, never varies, but the degree or amount of care may vary with those circumstances. For example, in circumstances of slight risk or danger, a slight amount of care might be sufficient to constitute reasonable care, while in circumstances of greater risk or danger, a correspondingly greater amount of care would be required to constitute reasonable care."

a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Burke* v. *Mesniaeff*, supra, 334 Conn. 116.

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given." (Internal quotation marks omitted.) *Farmer-Lanctot* v. *Shand*, 184 Conn. App. 249, 256, 194 A.3d 839 (2018). "Failure to charge precisely as proposed by a defendant is not error where the point is fairly covered in the charge. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." (Internal quotation marks omitted.) *Smith* v. *Greenwich*, 278 Conn. 428, 437, 899 A.2d 563 (2006).

"It is well established that not every improper jury instruction requires a new trial because not every improper instruction is harmful. [W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict." (Internal quotation marks omitted.) *Burke* v. *Mesniaeff*, supra, 334 Conn. 121.

Although the plaintiff's premises liability claim is a negligence cause of action; see *Diaz* v. *Manchester*

*Memorial Hospital*, supra, 161 Conn. App. 791 n.4; the court failed to give a standard negligence charge, which would have defined "negligence" and "reasonable care." See, e.g., Connecticut Model Civil Jury Instructions 3.6-3, available at https://www.jud.ct.gov/JI/Civil/Civil.pdf (last visited September 23, 2024) ("Common-law negligence is the failure to use reasonable care under the circumstances. Reasonable care is the care that a reasonably prudent person would use in the same circumstances."). There is no question that the definitions of negligence and reasonable care are relevant to the issues of a negligence case, which is evidenced by the trial court's repeated use of these terms throughout its charge. See, e.g., *Lindquist* v. *Marikle*, 99 Conn. 233, 235, 121 A. 474 (1923) ("[T]he jury did not have before them any instruction as to what constituted negligence on the part of the defendant, or contributory negligence on the part of the plaintiff. A charge which omits, in a negligence action, these basic rules of guidance, does not adequately present the case to the jury."); *Conway* v. *Waterbury*, 84 Conn. 345, 349–50, 80 A. 83 (1911) ("it is always proper, and generally necessary, for the court . . . to state the standard of duty to be that of a person of ordinary prudence under similar circumstances"). Accordingly, we agree with the defendant that the court improperly failed to define these terms for the jury, and we are not persuaded that these definitions were subsumed within the court's premises liability instructions. The question remains, however, whether the defendant can establish that this error was harmful.

The defendant contends that our Supreme Court's decision in *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 935 A.2d 1004 (2007), "is clear and controlling: The failure to define negligence and reasonable care is harmful error." In *Mahon*, Robert Bowers (decedent) was killed when his motorboat, which had lost power due to a poor connection caused by a defective socket,

was struck by another motorboat traveling on a lake. Id., 649–50. The plaintiff, the administrator of the decedent's estate (decedent's estate), brought a product liability action against the manufacturer of the defective socket.[4] Id., 650. In its answer, the manufacturer asserted comparative negligence as a special defense, alleging "that the accident and any injuries or damages resulting therefrom were due . . . to the decedent's negligent operation of his motorboat and to [his] failure to maintain accessible and operational safety equipment on the boat." Id., 650–51. The manufacturer requested that the court instruct the jury "that the duty of care applicable to the decedent's operation of his motorboat was 'the care which an ordinarily prudent person would use in view of the surrounding circumstances.' . . . [I]n its charge to the jury, the trial court properly explained that the standard of care applicable to the . . . product liability claims was strict liability. . . . [T]he trial court explained: 'It is the unreasonably dangerous condition of the product that makes [a] defendant responsible. It is not whether the [manufacturer] knew of the defect or had notice that the product was defective, and it is not whether the [manufacturer] was negligent in selling the product.' " Id., 651–52. With respect to the manufacturer's comparative negligence special defense, "the trial court did not instruct the jury in accordance with [the manufacturer's] request to charge." Id., 652. The jury returned a verdict for the plaintiff "but determined that the decedent was 33 1/3 percent contributorily negligent." Id., 653. The plaintiff appealed, and our Supreme Court transferred the appeal to itself. Id., 649 n.2.

---

[4] Four passengers were aboard the boat at the time; two passengers drowned, and the other two suffered serious injuries as a result of the crash. *Mahon* v. *B.V. Unitron Mfg., Inc.*, supra, 284 Conn. 649–50. Although there were three consolidated product liability actions involved in *Mahon*; see id., 648 n.1; for simplicity, we limit our discussion to the product liability action brought by the decedent's estate against the manufacturer.

On appeal, the plaintiff claimed, "that because the trial court's jury charge contained no definition of negligence, it provided the jury with inadequate guidance for resolving [the manufacturer's] claim that the accident was caused, at least in part, by the decedent's negligence." Id., 655. Our Supreme Court agreed, concluding that "the trial court provided no guidance [as] to the standard that the jury was required to apply in determining whether the decedent was negligent and, if so, the extent to which his negligence was a contributing factor in the accident that resulted in his death. Indeed, the trial court made only one reference to the concept of negligence in its entire jury charge, explaining that strict liability did not require proof that [the manufacturer] had been negligent in selling the product at issue. At no time, however, did the trial court explain that negligence is the failure to exercise the care that an ordinarily prudent person would use under the circumstances. . . . Without an explanation by the court of the applicable legal standard—in this case, negligence—the jury essentially was left to evaluate the decedent's conduct by whatever standard it deemed appropriate. The trial court's instructions, therefore, were plainly inadequate to guide the jury in its deliberations on [the] special defense of comparative negligence. Because the jury decided the issue of the decedent's comparative negligence in an instructional vacuum, we cannot conclude that the trial court's instruction fairly presented [the manufacturer's] comparative negligence claim to the jury in such a way that injustice was not done to the decedent's estate." (Internal quotation marks omitted.) Id., 658–59.

According to the defendant, "[h]ere, as in *Mahon,* the charge left the jury to flounder in an instructional vacuum. . . . The jury had no yardstick by which to measure the defendant's conduct and, unfamiliar with the law, may have invented its own. . . . For example,

the jury may have thought—wrongly—that a restaurant is responsible for any injury that any patron suffers on its property, even though that is not the law. . . . Similarly, the jury wrongly may have assumed that it could assess 'reasonable care' in the abstract, untethered from the circumstances of the case, or based on each juror's subjective view of reasonableness." (Citations omitted; emphasis omitted.) We are not persuaded.

In *Mahon* v. *B.V. Unitron Mfg., Inc.*, supra, 284 Conn. 650, a central point of contention was whether the deaths and injuries resulting from the collision were caused by the manufacturer's defective socket or by the decedent's negligence. Consequently, because the trial court failed to give the jury sufficient guidance to determine whether the decedent was negligent, our Supreme Court concluded: "In such circumstances, the decedent's estate has satisfied its burden of establishing that the instructional impropriety was harmful." Id., 659. Moreover, the trial court made its sole reference to negligence to explain "that strict liability did not require proof that [the manufacturer] had been negligent in selling the product at issue." (Internal quotation marks omitted.) Id., 658. Our Supreme Court specifically noted that, "[a]t no time, however, did the trial court explain that negligence is the failure to exercise the care that an ordinarily prudent person would use under the circumstances." Id. Thus, the court's determination that the instructional error was harmful was based on a consideration of how that error related to the court's instruction as a whole and to the particular issues in dispute in that case. Accordingly, we reject the defendant's claim that *Mahon* requires that we find that the instructional error in the present case was harmful.

Instead, "[t]o determine whether the court's instructional impropriety was harmless, we consider not only

the nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury, but the likelihood of actual prejudice as reflected in the individual trial record, taking into account (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (Internal quotation marks omitted.) *Perdikis* v. *Klarsfeld*, 219 Conn. App. 343, 384, 295 A.3d 1017, cert. denied, 348 Conn. 903, 301 A.3d 528 (2023).

The defendant provides a cursory analysis of these factors in its principal appellate brief, arguing that "the 'natural and probable effect' of failing to define negligence and reasonable care was prejudic[ial] to '[its] ability to place [its] full case before the jury' " because "[i]t would have been improper for defense counsel to tell the jury what those terms mean (e.g., in summation)." (Citations omitted.) It further argues that "the record makes the likely impact of the court's error plain. . . . The defendant's negligence was the central issue at trial: The parties discussed it in their opening and closing arguments; [e]very witness testified about facts that bear on it; [and] [s]everal key exhibits were offered to prove it. . . . Consequently, the charge did not 'fairly present . . . [the] negligence claim to the jury in such a way that injustice was not done to the [defendant].' " (Citations omitted; emphasis omitted.) The plaintiff responds that "the defendant cannot prove that the jury was misled or confused in a way that 'tainted' [its] ultimate decision—and thus cannot show that harmful error occurred." We conclude that the defendant has failed to demonstrate that the court's failure to define negligence and reasonable care likely affected the verdict.

There is no indication that the failure to define negligence and reasonable care affected the defendant's ability to present its case to the jury, as the defendant's

defense focused on whether the Batman decal caused the plaintiff to fall and whether it was on the floor before the restaurant opened for the day. In other words, the defendant denied that it was liable because the Batman decal neither caused the plaintiff's fall nor was present for a sufficient time for purposes of establishing that the defendant had constructive notice of the defect. The record reflects that there was no limitation on the defendant's ability to present this defense due to the court's refusal to define negligence and reasonable care in its jury charge.

During opening argument, the plaintiff's counsel argued that "[s]omething happened in terms of human error. They cleaned the place after closing. They obviously missed it. . . . They had two chances to find it, so it had to be there from the night before because no one dropped it that morning, because there was—the restaurant just opened, there was only one table seated. That was Paterno's group, and they didn't have it. So, it had to be there overnight. So, they had plenty of time to find it. They had plenty of time to remove it. They didn't. . . . That is the sequence of events." In contrast, the defendant's counsel argued that "you're gonna hear from the judge that we had to either know about [the Batman decal] or should have known about it. You're not going to hear from anybody where this [Batman decal]—and again, if the [decal] even was what caused the fall, where it came from, or how long it had been there. What you will hear here is that the night before this incident occurred, after closing, all the chairs were picked up off the floor and a full cleaning was done of the restaurant. You're also gonna hear that that morning, we opened at 10:30, this incident happened fifteen or twenty minutes later, that the hostess and all of the serve staff [are] supposed to go around and spot sweep all of their areas. That's all the testimony that you will hear."

The defendant's counsel repeated these arguments in his closing remarks, arguing that, "[n]o one, including the plaintiff, could say that that is what she slipped on. The plaintiff needs to prove what she slipped on. She needs to prove the defect. No one was able to sit there and tell you that's what she slipped on because they can't. . . . It makes more sense, frankly, that she tripped over her own feet. And that's why she couldn't break her fall. What you also never heard is where it came from. Where—the [Batman decal], where did it come from? . . . You haven't heard how long it was there. You haven't heard how it got there. Never heard that anyone at the [restaurant] knew about it. Never heard . . . any of those things." The defendant further argued that "[i]t's impossible for [the plaintiff] to meet her burden of proof. The restaurant closed the night before and was cleaned after closing and again before opening, some fifteen minutes before this incident occurred. You heard that from multiple people. You heard that from four or five different people. . . . [T]he only decision to be made here is for a defendant's verdict."

In response to the arguments of the defendant's counsel, the plaintiff's counsel argued: "The people at [the Paterno] table found the [Batman decal], and they thought it was connected with the fall, and they brought it to the attention of the restaurant, and the restaurant put it on [its] accident report. This is not some random finding. This is something that they came up with, that was what they saw on the floor, and they thought it was connected, and that's the only rational, reasonable explanation for why she fell. There was no other reason. . . .

"Do we know where the decal came from, no. We're not required to know that. . . . And how long had it been there? I think we have a good idea of that because it had to be there from the night before. It wasn't

dropped there [that] morning. There was no one there to drop it. The only table was the adults [at] the Paterno table. They didn't have a Batman decal with them. So, where was it from? It had to be from the night before. It had to be something that was missed. It was overnight. Two chances to find it. Both failures. They are responsible because . . . they breached their duty to an invitee to keep the premises safe. . . . So, I think all that is pretty clear."

As to the likelihood of actual prejudice, the defendant argues in its reply brief that "[t]his case turned on whether the defendant had constructive notice of the decal. . . . Constructive notice asks whether the defendant, 'using reasonable care, should have known of the unsafe condition in time to have taken steps to correct the condition or take other suitable precautions.' . . . Thus, it was critically important for the jury to evaluate what the defendant should have known about the condition of the floor at the time the plaintiff fell." (Citation omitted.) Therefore, according to the defendant, "[t]he jury's verdict, finding the defendant 75 [percent] at fault notwithstanding a lack of any evidence that the defendant had constructive notice of the decal, indicates that it was misled about the standard it was required to apply." We are not persuaded.

Although the parties disagreed as to whether the Batman decal caused the plaintiff to fall and whether it had been on the floor since before the restaurant opened, there was no dispute that the defendant, exercising reasonable care, either should or would have discovered the decal if it had been on the floor since the previous night. Indeed, all the evidence confirmed that the restaurant floors were cleaned the night before the accident and inspected again in the morning before the restaurant opened, and the defendant's general manager, Corso, conceded that he would expect the nightly cleaning crew and the opening staff to find foreign

objects and remove them from the floor as part of their duties. Consistent with the evidence presented, counsels' arguments focused on a lack of notice and causation, not on whether the defendant should have discovered the Batman decal if it was present before the restaurant opened. Thus, the question for the jury was not whether, in the exercise of reasonable care, the defendant should have inspected the floors or even whether a reasonable inspection of the floors would have revealed the Batman decal, as the defendant did not dispute these points. Instead, the jury had to decide whether the plaintiff slipped on the Batman decal and whether the Batman decal had been on the floor since before the restaurant opened for the day. Given the state of the evidence, which we have concluded was sufficient for the jury to find that the Batman decal caused the plaintiff to slip and fall and that the defendant had constructive notice of the decal, and considering counsels' arguments on the basis of that evidence, we are not persuaded that the jury's verdict "indicates that it was misled about the standard it was required to apply," as the defendant contends.

Moreover, although the court did not define negligence and reasonable care in its jury charge, its other instructions provided sufficient guidance given the dispositive factual issues that were disputed. The trial court set forth each of the plaintiff's allegations of negligence as well as the relevant elements of a premises liability claim, and it correctly identified the applicable duties that the defendant owed to the plaintiff. The defendant does not challenge any of these instructions and fails to identify any deficiency in this regard. Nor is there any indication that the jury was misled as to the issues it needed to resolve, as it requested no further instruction before returning the verdict. Consequently,

we conclude that the defendant has failed to demonstrate that the court's failure to define negligence and reasonable care was harmful.

The judgment is affirmed.

In this opinion the other judges concurred.